Arguments not to exceed 15 minutes preside. Mr. Matthew O'Rourke for the petitioner, cross-respondent. Good afternoon. Good afternoon, your honors. May it please the court. Matthew O'Rourke for petitioner, cross-respondent, Erickson Trucking Service. Your honors, the board's application of right line in this case is not entitled to deference and its order should be vacated because the board deviated from its precedent without expressly and rationally explaining that deviation. The board's order is unenforceable for two reasons. First, right line instructs us that there are two types of cases, pretext cases and dual motive cases, and the board must distinguish between the two. When an employer's affirmative defense has at least some merit, it's a dual motive or mixed motive case, and the issue of pretext is irrelevant. The board, however, did not make that distinction here. Here, the board found that Erickson's affirmative defense had at least some merit. In fact, the ALJ and the board adopted his finding, found that he had no reason to doubt Mr. Erickson's business defense, and yet the board erred then when it found that it's still the reason was pretext. Second, when the board engaged in the dual motive analysis, it wrongly shifted the burden to Erickson's and held that the company violated the act because it did not rebut the general counsel's prima facie case, but this is the wrong standard. In this circuit's 1998 case, NLRB v. 4 Daniel, the court applied transportation management and it held while the NLRB can require an employer to bear the burden of persuasion as to the affirmative defense, it cannot shift the burden of persuasion as to an element of the general counsel's case. And this makes sense. After all, the whole point of right line is that even if the general counsel carries its prima facie case, the employer still does not violate the act if it proves its affirmative defense that it would have taken the same action even in the absence of animus. But by that exact last point, there's an awful lot of evidence here that this was not just about getting rid of cranes or small cranes or big cranes. There's just an awful lot of evidence that Mr. Erickson was really frustrated by what he perceived as a change in attitude at the local. And I'm just having a hard time getting beyond that. I mean, you can talk legal standards here, legal standards there. I just keep coming back to all those just straight-up statements in the record, which the one thing is tricky is those were credited. Those aren't just free-floating pieces of evidence. The ALJ credited them. So I'm having a hard time with that. I understand that, Your Honor. And as you understand, the legal standards are important. That's the whole point of right-line, that even when there is evidence. My point is it doesn't matter here. I don't know how it matters here. That is exactly my point. The legal standard doesn't matter here. I'm disagreeing with you about that. With this amount of evidence, I'm just – I just don't know how you – we know what the test is. We know what the statute says, what an employer is not allowed to do, punish people for doing work on behalf of a union or a union doing work on behalf of their employees. We just know that's the key thing. And it's just very hard to get away from these statements, from the key decision-maker. Well, Your Honor, the board would have you, and the board did, ignore Erickson's defense because of it was distracted by that animus. But if we – No, that's not what they credited. They credited him with saying we're not disagreeing that the industry was facing challenges. Erickson gets credit. I mean that's the premise of your legal standards argument. Yes, Your Honor. I'm just making the point, though, that that shows the ALJ wasn't being biased or shading the evidence. The ALJ credited that point but then credits all this, I think, just very damning evidence. That's not what he said, Your Honor, and we have to look at what he said. What he said was – in two points. First, he said the respondent has – the respondent being Erickson's – has not demonstrated that the timing of the layoffs was based on specific economic conditions as opposed to animus towards the union. When we look at the timing of the decision, this was a long-term decision. Mr. Erickson has been in the business for over 40 years. He understands cranes. He understands crane business. He understood that the small crane market was declining. He knew – Help me with this piece of evidence. I'll be more specific. Yes, Your Honor. What's it mean when he says things like if the union gets off my back, I can rehire these people? I don't understand how that doesn't just destroy the whole case. If the explanation for the firings was the crane industry, how is it that he could suddenly rehire them if they got off his back? Doesn't that show the causal connection to his frustration with what the union was making him go through? But the causal connection, Your Honor, is not the issue. It's whether he would have taken the same action even in the absence of it. I'm getting the same thing. That is the causal question. So Mr. Erickson would have taken the same action, and he told, in addition to saying some things which were evidence of animus, he also told each of the six operators here that he was laying them off because the small crane market was declining, because he couldn't make a profit on them. But if he says, okay, the small crane market is declining, and I can't make a profit operating these small cranes, and the market is changing and all of that, but then he says, as Judge Sutton just said, but if the union could get off my back, I could rehire you. That kind of makes me not believe that it's the economics that was causing him to fire him. And the ALJ certainly, I mean, we don't have to actually believe that. We just have to think the ALJ could reasonably believe that. Yes, Your Honor. And there is evidence that Mr. Erickson was frustrated, and the ALJ found that Mr. Erickson was frustrated. But, again, getting back to right line, the whole point of right line is that even if there is that frustration, if Erickson proves that it would have taken that same action despite that frustration, it carries its affirmative defense and it's not a violation of the act. So we do need to separate the two. Analytically, I understand, this isn't how things work in the real world. One thing is said on one hand, and then he turns around and says something else, and I understand that's how things work in the real world, but we have to look at this analytically and intellectually and separate the prima facie case of Animas and the affirmative business defense. This was a long-term decision to sell the small cranes. It was the perfect time in 2016 to sell the small cranes. The ALJ credited Mr. Erickson's analysis that he sells cranes when they have been owned for 10 years or he has operated them for less than 10,000 hours. But isn't it true that he didn't actually sell the cranes? Mr. Erickson did sell the cranes. He did not sell them by the time we had the hearing in this case. The board rejected our motion to submit new evidence to show that he had sold the cranes. If this were to be remanded and the board considered additional evidence, we would submit that all four cranes have been sold at this point. The general counsel also did not show that there was any work out there for these operators to do, which would have cast doubt on Mr. Erickson's decision. But there wasn't because the small crane industry is declining. What about the other evidence that they could have used these employees that were fired in other positions besides being the small crane operators? Your Honor, these were the six least qualified crane operators that Erickson's employed. They were not qualified for any other position with the company. When the company did have sporadically work for them to do, Mr. Erickson called the union hiring hall, and, in fact, three of the operators who were laid off were called back and did work for him when there was sporadic work for which they were qualified. But in looking at the qualifications of these six operators, one was not qualified or certified to operate any crane, one was not qualified to operate any crane, and then the other four were only qualified to run either the 40 or the 60-ton cranes, and these are some of the smallest cranes that Mr. Erickson owned at the time, and they are some of the smallest cranes out there. So when we're looking at the small crane market deteriorating and a lack of work in small cranes, we're talking about 40- and 60-ton cranes. There just wasn't work for these operators to do. So even if you credit the ALJ and the Board's conclusion that Mr. Erickson, that there was evidence of animus, there are still legitimate reasons for Mr. Erickson to take these actions, and he would have done so regardless of what the animus was. Now, this Court's opinion in Dayton newspapers is instructive here because in Dayton newspapers there was evidence that the employer had made the decision to lay off truck drivers by a certain date and then the employer accelerated that once the union went on strike. And the Court held that even though the decision was accelerated based on union considerations, that the employer should not be punished for what was a purely business decision. And here, even if we credit the finding of animus and find that the General Counsel carried its prima facie case, the decision here would have been accelerated just because of animus. Mr. Erickson had decided in 2015 that the small crane market was deteriorating. He decided in late 2015 and early 2016 that he needed to sell the small cranes and reinvest in large cranes. And so even if we say that he accelerated this decision in the summer of 2016 because of the union's involvement with some small, minor pay disputes, under this Circuit's holding in Dayton newspapers that was perfectly acceptable and not a violation of the Act. If there are no further questions, I will cede my time and address on rebuttal. Thank you. Thank you. Ms. Burdick. You may please accord Ruth Burdick, appearing for the National Labor Relations Board. Good afternoon, Your Honors. I'm glad to see that, from the arguments so far, that it sounds like the Court has a very good grasp of the legal mechanisms that work in these right-line cases. But I'd like to just begin, if I could, by simply skipping the stone across the lake and just hitting some key points with regards to the Board's analysis to demonstrate that the Board did hear under right-line what it always does and should do. And here, after finding an unlawful motivation was established, the Board then determined that the stated reason proffered for discharging these six was actually a pretext. And once a pretext is established, then the inquiry is at an end. And here the Board could have ended its inquiry at that point under that subtle principle, and that principle has been well established in this Circuit and others. It's in both Eric Gass' cases more recently, and Conley, it goes all the way back through this Circuit's law, that once a pretext is established, there's no reason to then do any further. Did Hale Ray ever say Erickson wouldn't have fired them but for the crane? I mean, so that's what he's really focused on. He's saying, okay, fine, there's evidence that would support a finding of animus, but where's the finding that he wouldn't have fired them anyway? So I do need to preface that slightly. I am continually unweaving their arguments in order to make sense of them. They seem to be using the word animus rather than pretext, and there's quite a big, large difference. So I just want to make sure that we're clear. Well, maybe I don't mind if you criticize me. Criticize me. What will be wrong with my asking this question? Is it appropriate for the ALJ to at some point say, okay, there's some animus, but then there's the declining business? I have to ask myself, what's the likelihood Erickson would have fired them anyway, given the declining business? And so what I'm just curious, that seems like a fair question in this case. You can tell me it's not, but it seems like a fair question. And did the ALJ ever say, well, no, the only reason the firing happened was animus? Oh, okay. So now the other side has mentioned the difference between a pretext case and a dual motive case. And I think part of the confusion here is pretext is found on one of two bases. The first is the asserted reason simply did not exist. And the second basis is pretext is found when the asserted reason was simply not relied on in making the adverse actions. And that's the kind of case we have here. It does appear that the ALJ says that pretext was established, therefore the inquiry actually should end. What ended up happening is the ALJ, in abundance of thoroughness, went ahead and made an alternative finding and said even if this wasn't a pretext case, we would still find that the asserted reason that the company had not carried its burden to prove its affirmative defense that it would have fired these six employees without the presence of animus. So here the board doubled its job and very thoroughly went over through both analytical models. And I think what's fundamental to the company's misunderstanding of the case is because there's two ways to find pretext, I believe it's a reason that was not, in fact, relied on and saying, aha, so you're saying there's a little kernel of truth to this. I had this long-term plan or was thinking about long-term that I'm going to have to adjust to the market conditions and eventually scale down my use of smaller cranes. And it's interesting that they rely on Dayton because Dayton had extremely different facts. Here the evidence shows that this was just kind of a preliminary plan to sometime at some point make some adjustments. And at the same time in Dayton it was a far different situation where there was a relocation, a consolidation of two facilities and consolidation of jobs. There was a very thorough, well-developed business plan for this. It was presented to the union a year beforehand. And then as the strikes began to happen, the employer at that point said, you know, we're close to going ahead and relocating. Let's go ahead and do it. And this court found that under those kinds of situations that acceleration was fine. But here I'm actually quite amazed that in the reply brief when the company is discussing Dayton, it actually says Erickson planned to sell the small cranes and lay off the employees at some point. But it was pushed to take the action when it did because of union activity. This is actually a quote from their reply brief. And I think it misconceives not only the vast quantity of direct evidence of animus we have in this case, which seems to overwhelm the normal functions of the operations of the right line, but this is exactly what this court, the type of case this court had in Birch Run, which is a theory that the general counsel proceeded on, which is when you have a situation. So your point is that that's an admission of viability? I'm wondering. I put a question mark by it and an exclamation point because if that's at the end of their case what they're arguing, that and the fact that they're arguing that the air gas principle that once pretext is found the inquiry is at an end, which I mean they would have had to have required or tried to petition for initial embankment to not deal. That principle is so solidly embedded in the law that they are apparently trying to avoid that. But I also want to say the pretext finding by the board here was not only based on the animus and the quantity of direct evidence, which this court in Turnbull said was the best evidence of animus. It was also the timing of the union's increase of representation of its employees with regards to wages and with regards to the pay issues that were coming up. And in addition to that, there was actually four clusters of evidence. There was also the fact that this company had never permanently laid off any employees previously. They let people go for weeks or days, brought them back when there was a job. They kept their keys and their cards. They were full-time employees but were just brought in. This is a construction business. They work as a project up here. And here they had never before permanently laid off. And here he permanently laid them off. And then immediately after that, within that year, 26 times approached, called the union non-exclusive hiring hall and requested temporary employees who were then doing the same work that these employees would have been doing. So I don't even understand what they're saying about the board would have to present evidence that there was work that wasn't fulfilled. But first of all, that's also their burden to present evidence, the contrary, because it's their burden of proof on the affirmative defense. So this is a very atypical case for a number of reasons. One, it's a pretext case, and that ends the inquiry. The board did additional work, went through the regular affirmative defense, and said we would have thrown that out anyway. We would not have found that they carried the burden, despite the fact that we found pretext. And I think it's also very important to note that the ALJ's decision, which the board adopted at Appendix A22, contains everything we basically need to decide this case. It has the pretext finding, the four bases of it, which are summarized, but earlier in the decision are the details of those bases. But also it notes that besides the fact that the respondent wouldn't have been found to have satisfied the affirmative defense, they make the point that is very similar to what this court found in Birch Run, which is that, and I quote, the respondent's selection of the six employees was due not to any particular union activity on their parts as individuals, but rather was meant to send a message to the union and to the union employees to pressure the union to retreat from their activities in representing the employees. So once again, it's all tied into this scheme, which is atypical. Typically we have an employee who presents an authorization card and then is disciplined or something where they do individual activity. But here we have a scheme that's the same sort of theory that was in Birch Run. That's what the general counsel proceeded on. So I just wanted to clarify that for the court in case there was anything in that. I would be happy to answer. I think my light is, I never can see the light. But I'd be happy to answer any further questions. The red light is not on. Oh, it isn't. I see a red light. Oh, excuse me. No, it isn't, so I don't want to mislead you. But I also don't want to mislead you in this sense. I think we understand your argument. Okay, good. Thank you. And thank you very much. And the board requests that the court please enforce the board's order in full. Thank you. Mr. O'Rourke. Thank you, Your Honor. First, the right line does not say that the board or the ALJ can find pretext on the one hand, but in the alternative, just in case, I'll make this finding as well. Right line says that cases are either a pretext case or a dual motive case. And when we have a dual motive case, it's because the employer's ---- I mean, just across the law, we have alternative rulings all the time, and I think we tend to appreciate it when agencies or lower courts do that. Well, what the ALJ and the board did not do here is say that they did not doubt Erickson's legitimate business defense in the alternative. The ALJ said he did not doubt Erickson's legitimate business defense. Well, that's not quite what he said. He said, I do not doubt Erickson's contentions concerning general business trends in the industry and his long-term plans to adopt them. But you could think that an economic condition exists but not think that it was the cause of the letting go of these employees. So if we dig into what the ALJ said there, the first was that the general business trends in the industry. He agrees those exist. Correct. And he agrees there are long-term plans to adopt them. So Erickson's long-term plans to adopt to the declining small crane industry was to sell the small cranes and use that money to reinvest it in the large cranes. And this was something that he had planned for quite some time, something where he could see the declining hours in small cranes, the declining money in small cranes. This was less than 20% of his business, and it had been, just 10 years earlier, more than 50%. This was something that had decreased significantly, and he saw that the best way, the most profitable way to run his company, was to sell these small cranes and invest in large cranes, which were six-sevenths of his revenue in cranes on an annual basis in 2015. So this is a decision that he made, and when we look at what the ALJ credited, he credited that business decision. He took offense or he questioned the timing of the decision. But the whole point is, getting to the general counsel's argument, is that when there is some merit to the affirmative defense, this is not a pretext case. So the analysis does not stop simply because the ALJ and the board found that there was pretext here. What the board failed to do was to dig into Erickson's affirmative defense, and instead he simply found he made the ALJ made the mistake, and the board adopted that mistake of saying, well, there's animus here. The employer did not rebut that animus, and so I'm going to find for the employer. The Second Circuit case of Holochrome is really instructive on the standard and the shifting burden of what's required of both the board and the employer. In a dual motive case, the general counsel must carry its prima facie burden. Then the employer has an opportunity to rebut that prima facie burden, and even if the employer does not rebut the prima facie case, the employer has an opportunity to present its affirmative defense. But what we have here is the ALJ and the board finding that because the employer did not rebut the prima facie case, it therefore did not carry its affirmative defense, and that is not the law. Thank you, Your Honors. Thank you to both of you for your helpful briefs and oral arguments. Thanks for answering our questions. We always appreciate that. The clerk may submit the case.